**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

NICHOLAS TODD SELLICK,

                           Plaintiff,

        v.                                              1:23-CV-01616
                                                                       (LEK/CFH)

TOWN OF GLENVILLE, GARTH RICCO,

                           Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Luibrand Law Firm<br>950 New Loudon Road<br>Latham, New York 12110<br>Attorneys for plaintiff | KEVIN A. LUIBRAND, ESQ. |
| Johnson Laws, LLC<br>646 Plank Road, Ste. 205<br>Clifton Park, New York 12065<br>Attorneys for defendants | APRIL J. LAWS, ESQ. |

**MEMORANDUM-DECISION & ORDER**

      Presently before the Court is defendants' Town of Glenville and Garth Riccio's motion to disqualify plaintiff's counsel, the Luibrand Law Firm.  See Dkt. No. 8. Defendants argue, generally, that Riccio was a prospective client of the Luibrand Law Firm, who contacted the law firm regarding potential representation regarding an employment issue involving defendant Town of Glenville which is substantially related to the claims plaintiff raises in the instant action.  See id.  Defendants contend that the Luibrand Law Firm must be disqualified from representing plaintiff due to conflict or an appearance of conflict.  See id.

Plaintiff opposes.  See Dkt. No. 9.[1]

## I.  **Background**[2]

Plaintiff and defendant have a diverging recall of events.  Parties agree that defendant Riccio first contacted Mr. Luibrand's office on February 13, 2023.  See Dkt. No. 8-1 at 7.  Riccio contends that he had "five separate conversations with Mr. Luibrand's office, including a conversation with Mr. Luibrand that lasted twenty [] minutes."  Dkt. No. 8-2 at 2.  Riccio "cannot be certain if [he] mentioned Mr. Sellick by name, [but] I referred to a 'political hire' that made false allegations against me, which, at the time, I thought was the 'real' reason I had been disciplined."  Id. at 3.  Riccio also contends that he "identified [him]self as the Heavy Equipment Operator for the Water Department of the Town of Glenville."  Id.  Riccio states that during his conversation with Mr. Luibrand, he was informed "that he could represent me in a civil lawsuit against the Town."  Id.  At the request of Mary Grace Luibrand, the Luibrand Law Firm's legal assistant and Mr. Luibrand's spouse, plaintiff e-mailed the Luibrand Law Firm a copy of the "Last Chance Agreement."  Id.

Riccio contends that on March 3, 2023, he attended "a social gathering attended by both Mr. and Mrs. Luibrand at the Sport Island Pub in Northville, New York, with a mutual acquaintance of ours."  Dkt. No. 8-2 at 3.  Riccio states, "[w]e all made plans to meet the next day . . . at the Stump City Brewery . . . for a pub crawl."  Id.

---

[1]  Familiarity with the facts and claims underlying the complaint is assumed and will be repeated here only to the extent necessary to address the instant motion.

[2] The Court's citation to the parties' submissions is to the pagination generated by the Court's electronic filing and case management system (CM/ECF), which is located at the header of each page.

2

Plaintiff[3] contends that Riccio's first contact with the Luibrand Law Firm was a phone call on February 13, 2023, where he "spoke generally with the firm's receptionist, who did not take notes." Dkt. No. 9 at 2. The receptionist referred the call to Mary Grace Luibrand, "who handles initial contacts," and she spoke with plaintiff that same day. Id. Ms. Luibrand's notes reflect that Riccio expressed that his employer provided him a letter the day before, which was due the next day, which would place him on a one-year probation, a five-day suspension, and "a long list of terms." Id. The notes reflect that Riccio told Ms. Luibrand that he was facing discipline because "he was taking extended lunches and breaks." Id. Lastly, Riccio told Ms. Luibrand about what his Union representative advised him regarding grieving the action, and he expressed that he was unsure if he should sign the document. See id. Plaintiff contends that the February 12, 2023, communication between Riccio and Ms. Luibrand did not include discussion of "allegations against Defendants." Id. at 2. Plaintiff further states that the "Last Chance Agreement" plaintiff e-mailed to the Luibrand Law Firm "relates solely to Defendant Ricco's claimed time and attendance issues." Id. at 3. Plaintiff explains that, during Mr. Luibrand's call with Riccio, Mr. Luibrand advised him that "the firm could not help and referred him to his union representatives who Defendant Riccio said were then advising him." Id. at 3.

---

[3] As relevant here, plaintiff submits affidavits from Kevin Luibrand and Mary Grace Luibrand, legal assistant for the Luibrand Law Firm and spouse of Kevin Luibrand. See Dkt. Nos. 9-1, 9-5. Plaintiff also submits an "inquiry" dated February 13, 2023, authored by Jen McPhail, a Luibrand Law Firm employee who took notes during Riccio's first contact with the firm, seeking legal advice and potential representation. Dkt. No. 9-2. Plaintiff also submits a "Settlement and Last Chance Agreement by and Between the Town of Glenville and Garth Ricco." Dkt. No. 9-3. Plaintiff includes three pages of a text message conversation between Mary Grace Luibrand and Malissa Zatlokowicz. See Dkt. No. 9-4.

Plaintiff disputes defendants' suggestion that the Luibrand Law Firm had communications with Riccio during the time the firm was preparing a claim for plaintiff, contending that plaintiff did not even contact the Luibrand Firm until over two months after Riccio made contact.  See id. at 4.  Next, plaintiff disputes defendants' suggestion that there existed a social relationship between Riccio and the Luibrands, contending, contrary to defendants' portrayal, that Mary Grace Luibrand met Mr. Riccio's companion, Ms. Zatlokowicz in a "random encounter," that there was no advance planning; that neither Mr. Luibrand or Ms. Luibrand spoke with Riccio during this encounter; Mr. Luibrand "barely communicated with Ms. Zatlokowicz; "there was absolutely no conversation about any other matters that may have been related to work or legal representation"; and that they declined to meet up socially the next day.  Dkt. No. 9 at 5.

## II.  **Legal Standards**

"It is well-established in the Second Circuit that a motion to disqualify one's former counsel is committed to the court's sound discretion." Young v. Cent. Square Cent. Sch. Dist., 213 F. Supp. 2d 202, 215 (N.D.N.Y. 2002) (citing Marshall v. State of N.Y. Div. of State Police, 952 F. Supp. 103, 106 (N.D.N.Y. 1997)).  "The Court of Appeals has cautioned courts not to grant motions to disqualify counsel indiscriminately." Shabbir v. Pakistan Int'l Airlines, 443 F. Supp. 2d 299, 305 (E.D.N.Y. 2005) (citing Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)).  "[P]arties moving for disqualification bear a 'heavy burden' and must satisfy a "'high standard of proof.'" Applied Tech. Ltd. v. Watermaster of Am., Inc., No. 07 CIV3759 (LTS/MHD),

2009 WL 804127, at *4 (S.D.N.Y. Mar. 26, 2009) (quoting Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L. C., 440 F.Supp.2d 303, 308- 09 (S.D.N.Y. 2006).

The Second Circuit holds that disqualification of counsel is "warranted" where:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client.

United States v. Prevezon Holdings Ltd., 839 F.3d 227 (2d Cir. 2016) (quoting Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)); accord. N.Y. Rules of Prof. Conduct 1.9(a).5. "Disqualification of an attorney is only appropriate where there has been a clear violation of the Code of Professional Responsibility leading to a 'significant risk of trial taint.'" Shabbir, 443 F. Supp. 2d at 305 (quoting Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981)). "Such a risk exists when 'the attorney is in a position to use privileged information acquired in the representation of a client against that client in another matter' or when 'there is significant risk that the conflict will affect the attorney's ability to represent his or her client with vigor.'" Id. (quoting Universal City Studios, Inc. v. Reimerdes, 98 F.Supp. 2d 449, 455 (S.D.N.Y. 2000)). The objective of a disqualification rule is to "preserve the integrity of the adversary process." In re Agent Orange Prod. Liab. Litig., 800 F.2d 14, 18 (2d Cir. 1986) (quoting Bd. of Educ. of the City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)).

> In deciding a motion to disqualify, courts often seek guidance from the American Bar Association (ABA) and state disciplinary rules, though "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132–33 (2d Cir. 2005) (citing Bd. of Educ. v. Nyquist, 590 F.2d at 1246). We must always remember that the standard of professional conduct in federal courts is a matter of federal

5

<blockquote>
law. Shabbir v. Pakistan Int'l Airlines, 443 F.Supp.2d 299, 305 (E.D.N.Y. 2005) (citing In re Snyder, 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985) . . . . [)].
</blockquote>

Zalewski v. Shelroc Homes, LLC, 856 F. Supp. 2d 426, 432 (N.D.N.Y. 2012); Reyes v. Golden Krust Caribbean Bakery, Inc., No. 15-CV-7127(DF), 2016 WL 4708953, at *7 (S.D.N.Y. Sept. 1, 2016) (quoting Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 388 (S.D.N.Y. 2010) (internal citations omitted) ("Federal courts located in the State of New York also look to the NYRPC [New York Rules of Professional Conduct] in deciding disqualification motions, although, 'because the authority to disqualify an attorney is a function of the court's inherent supervisory power, these rules provide guidance only and are not conclusive.'").

New York Rules of Professional Conduct Rule 1.18, "Duties to prospective clients," states, as relevant here:

> (a) Except as provided in Rule 1.18(e), a person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a "prospective client."
> (b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9[4] would permit with respect to information of a former client.

---

[4] Rule 1.9: "Duties to Former Clients" provides:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
(b) Unless the former client gives informed consent, confirmed in writing, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer had acquired information protected by Rules 1.6 or paragraph
(c) of this Rule that is material to the matter.
(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
(1) use confidential information of the former client protected by Rule 1.6 to the disadvantage of the former client, except as these Rules would permit or require with respect to a current client or when the information has become generally known; or

> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
> (d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
> (1) both the affected client and the prospective client have given informed consent, confirmed in writing; or
> (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
> (i) the firm acts promptly and reasonably to notify, as appropriate, lawyers and nonlawyer personnel within the firm that the personally disqualified lawyer is prohibited from participating in the representation of the current client;
> (ii) the firm implements effective screening procedures to prevent the flow of information about the matter between the disqualified lawyer and the others in the firm;
> (iii) the disqualified lawyer is apportioned no part of the fee therefrom; and
> (iv) written notice is promptly given to the prospective client; and
> (3) a reasonable lawyer would conclude that the law firm will be able to provide competent and diligent representation in the matter.
> (e) A person is not a prospective client within the meaning of paragraph (a) of this rule if the person:
> (1) communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client-lawyer relationship; or
> (2) communicates with a lawyer for the purpose of disqualifying the lawyer from handling a materially adverse representation on the same or a substantially related matter.

NY ST RPC Rule 1.18, NYCRR. tit. 22, § 1200.

---

> (2) reveal confidential information of the former client protected by Rule 1.6 except as these Rules would permit or require with respect to a current client.

NY ST RPC Rule 1.9.

"A disqualification motion is a 'fact-intensive endeavor.'" Miness v. Ahuja, 762 F.Supp.2d 465, 478 (E.D.N.Y.2010) (citing, inter alia, Bd. of Educ. of City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979), admonishing that a decision to disqualify "can be reached only after a painstaking analysis of the facts and precise application of precedent")." Zalewski v. Shelroc Homes, LLC, 856 F. Supp. 2d 426, 427 (N.D.N.Y. 2012).

### III. Arguments[5]

#### A. Defendants' Position

Defendants argue that disqualification of plaintiff's counsel, the Luibrand Law Firm, is necessary because (1) there is an actual conflict, or, in the alternative, an appearance of conflict; and (2) failure to disqualify would lead to a substantial risk of a tainted trial and an unfair advantage for plaintiff. See generally dkt. no. 8-1. Defendants contend that, as a prospective client in a "substantially related" matter to the one plaintiff is now being represented on, plaintiff's counsel must be disqualified. See id.

Defendants further argue that the Luibrand Law Firm, through its communications with Riccio, has gained an unfair advantage in its representation of plaintiff. Defendants contend that Riccio engaged in a twenty-minute conversation with Mr. Luibrand, during which he

> discussed directly . . . the nature of his interactions and alleged conflicts with Plaintiff, or, at minimum, a "political hire" who accused Mr. Riccio of calling him a derogatory term and acting inappropriately in the workplace; his opinions on his employment discipline with the Town based upon these alleged conflicts; the confidential disciplinary practices and determinations

---

[5] The Court's citations to the parties' memoranda of law are to the pagination generated by the Court's electronic filing and case management system, CM/ECF, located at the header of each page.

8

>conducted by the Town regarding Mr. Riccio, including Mr. Riccio's discussion with Union Representatives.

Dkt. No. 8-1 at 14. Thus, they argue, because the current action "includes the allegations against Mr. Riccio which Mr. Riccio expressed to Mr. Luibrand served for what he believed was the basis for his discipline by the town," and for which plaintiff seeks punitive damages, "[p]laintiff's interests are clearly materially adverse to those of Mr. Riccio" and "would not only prejudice the town and Mr. Riccio, but would constitute an apparent conflict of interest."[6]  Id.

Defendants next contend that, regardless of an actual conflict, the appearance of conflict requires disqualification because plaintiff has an "unfair advantage that could taint the trial of this matter." Dkt. No. 1-8 at 14. Defendants argue that Mr. Luibrand, in consulting with Mr. Riccio, was in the position to have acquired information – which defendants argue is "sensitive and privileged" related to the present litigation –that "constitute[s] significant harm to Mr. Riccio and the town."  Id. at 16. Defendants argue that it "is at least probable that the Luibrand Law Firm, PLLC, had access to confidential privileged information that not only is relevant to the current lawsuit, but undoubtedly presents an advantage to Plaintiff."  Id.

In the legal standard section of their motion, defendants point the Court to Rule 1.18 of the "NY CLS Rules of Professional Conduct and the related comments."  See Dkt. No. 8-1 at 10, 11.

---

[6] This argument is contained within Point I, which starts by stating that, "[b]ased upon the record evidence before this Court, there is an actual conflict of interest that must bar the Luibrand Law Firm, PLLC, from prosecuting this case against Defendants." Dkt. No. 8-1 at 12. However, they appear to blend these arguments together and do not clearly distinguish why the continued representation would amount to an actual conflict versus an apparent conflict. Indeed, defendants conclude their analysis in Point I by contending that Mr. Luibrand's continued representation of plaintiff "would constitute an apparent condlict of interest." Id. at 14.

B. **Plaintiff's Position**

Plaintiff argues that defendants rely on outdated case law[7] in arguing that an apparent conflict of interest suffices for disqualification, contending instead that the current standard in this Circuit holds that it is insufficient to rely on an appearance of a conflict in seeking to disqualify counsel.  See Dkt. No. 9 at 6 (citing Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1247 (2d Cir. 1979); Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381 (S.D.N.Y. 2010)).  Plaintiff directs the Court to Streichert v. Town of Chester, New York, No. 19-CV-7133 (KMK), 2021 WL 735475 (S.D.N.Y. Feb. 25, 2021) throughout his arguments.

Plaintiff further asserts that defendants failed to demonstrate a conflict of interest because Riccio did not provide Mr. Luibrand with "significantly harmful" information.  See Dkt. No. 9 at 8.  Plaintiff argues that the notes of conversations between plaintiff and the Luibrand Law Firm, taken by Ms. Luibrand, reflect that plaintiff sought legal guidance over whether to sign a discipline agreement resulting from his employer's claim "'that he was taking extended lunches and breaks.'"  Id. at 9.  Plaintiff argues that Ms. Luibrand's notes do not show "'a party's undisclosed settlement strategy, its bottom line in settlement' or 'its views and impressions of the litigation, including its thoughts on the strengths and weaknesses of the parties' respective positions, and its opinions and impressions of even public documents and facts."  Id (quoting Streichert, 2021 WL 735475).  Similarly, plaintiff points to Mr. Luibrand's affidavit confirming that, in his phone call with Riccio, Riccio informed Mr. Luibrand that he had time and attendance issues, was facing discipline due to this, and had union representation.  See Dkt. No. 9

---

[7] See Dkt. No. 9 at 6 (citing Dkt. No. 8-1 at 14-15 (citing Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1978)).

at 9.  Plaintiff avers that what defendants refer to as "documentary proof" is only the records of the time and dates of Riccio's calls to the Luibrand Law Firm which does not amount to "anything material."  Dkt. No. 9 at 6.

Plaintiff disputes defendants' claim that Riccio told Mr. Luibrand that he believed plaintiff or a "political hire" was the true reason for his discipline or even that Mr. Luibrand provided Riccio with legal advice.  Dkt. No. 9 at 10.  Instead, plaintiff avers that Mr. Luibrand advised Riccio that "he could <u>not</u> help Mr. Riccio," and that he had to go through his union, which "owned" grievances.  Id.

## IV.  Discussion

The Court first addresses whether an apparent conflict of interest suffices to warrant a disqualification of counsel.  As plaintiff points out, in <u>Board of Ed. of City of New York v. Nyquist</u>, 590 F.2d 1241 (2d Cir. 1979), the Second Circuit reversed the lower court's disqualification of an attorney based on the appearance of impropriety, holding "when there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest of cases."  <u>Id.</u> at 1247; <u>see also</u> NYRPCA § 1.9:19.  "In light of <u>Nyquist</u>, most New York courts today consider the fuzzy 'appearance of impropriety' standard to be an insufficient basis for disqualification under Rule 1.9." NYRPCA § 1.9:19; citing <u>Forbes v. NAMS Intern., Inc.</u>, No. 07-CV-0039 (TJM), 2007 WL 2764795, at *2 (N.D.N.Y. Sept. 20, 2007); <u>Hickman v. Burlington Bio-Medical Corp.</u>, 371 F. Supp.2d 225, 229 (E.D.N.Y. 2005) (citing <u>Peacock Holdings, Inc. v. Massachusetts Mut. Life. Ins. Co.</u>, No. 94 CV 5023, 1996 WL 285435, at *8 (E.D.N.Y. 1996) and <u>In re Polaroid Erisa Litig.</u>, 354 F. Supp. 2d 494 497 (S.D.N.Y. 2005)).  This Court agrees with this line of cases and their

logic; thus, the Court will assess whether defendants demonstrated the existence of an actual conflict of interest. For the reasons discussed below, the Court concludes that they have not.

Insofar as defendants argue that there exists an actual conflict of interest,[8] defendants contend (1) that Riccio was a prospective client, (2) the matter for which Riccio sought legal counsel is substantially similar to the instant action, and (3) Mr. Luibrand gained an advantage and received a confidential document,[9] the Last Chance Agreement. See dkt. no. 8-1 at 12 (citing Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)).

First, plaintiff does not appear to challenge the suggestion that Riccio was a prospective client of plaintiff's counsel, Mr. Luibrand. See NY RPC Rule 1.18(a). Thus, the Court concludes that, although Mr. Luibrand either declined representation or plaintiff declined to engage the law firm, because Riccio sought a consultation from Mr. Luibrand, he was a prospective client under Rule 1.18. See id.

Second, the Court concludes that the lawyer's current client – plaintiff – has interests that are "materially adverse" to the prospective client, defendant Riccio. See NY RPC Rule 1.18(a). However, it is not clear that the matter for which Riccio sought

---

[8] As noted, supra n.6, the majority of defendants' arguments relate to an apparent conflict of interest. See Dkt. No. 8-1 at 12, See Dkt. No. 8-1 at 14 (" . . . [T]o allow Plaintiff's counsel to continue to prosecute this case would not only prejudice the Town and Mr. Riccio, but would constitute an apparent conflict of interest."; "At a minimum, Defendants have presented record evidence for an appearance of conflict which provides Plaintiff with an unfair advantage . . . .", 15 (". . . regardless of whether an actual conflict exists, there is at least the appearance of conflict . . ."). It is also noted that is a civil case, so referring to plaintiff's litigation as a "prosecution" is a misnomer. The Court addresses the arguments defendants specifically claim support an actual conflict of interest, acknowledging that defendants do not appear to truly separate out their analyses of these claims. See Dkt. No. 8-1 at 12-14.
[9] Defendant states that Riccio sent Mr. Luibrand "confidential document**s** relating to his employment matters," but do not provide any evidence that Riccio sent anything beyond the Last Chance Agreement. Dkt. No. 8-1 at 13 (emphasis added).

12

legal counsel is substantially similar to the instant action.  Defendants argue that Riccio informed the Luibrand Law Firm of his belief that he was being disciplined because of plaintiff/a political hire.  By contrast, plaintiff argues that Riccio only informed the Luibrand Law Firm that he was being disciplined due to time and attendance issues.  Review of the Last Chance Agreement suggests that the matter for which Riccio was seeking counsel – whether to sign the document – was discipline relating to time and attendance issues.  Although Riccio contends that he believes that the discipline was a cover for or retaliation due to plaintiff's false allegations against Riccio, he has not presented any evidence demonstrating that he sought legal advice and representation due to a retaliation issue. However, even if the Court concludes that the matters are "substantially similar," defendants arguments fail because defendants have not demonstrated that Riccio disclosed to Mr. Luibrand information or materials that would be significantly harmful to defendants.

      Defendants have failed to demonstrate that there is a significant risk of a tainted trial or "significant[] harm[]" should the Luibrand Law Firm be permitted to continue its representation of plaintiff.  See, e.g., Shabbir, 443 F. Supp. 2d at 305.  As noted, Rule 1.8 "only prohibits adverse representation where a lawyer receives information from a prospective client that could be 'significantly harmful' to the prospective client if used in the litigation at issue.'"  Benevida Foods, LLC, 2016 WL 3453342, at *11.

> The rule does not define "significantly harmful" information, but one court has interpreted it to include a party's "undisclosed settlement strategy," its "bottom line" in settlement, "even if [the number] changes over time," its "views and impressions of [the] litigation," including its "thoughts on the . . . strengths and weaknesses of the parties' respective positions," and its "opinions and impression of even public documents and facts." Zalewski, 856 F. Supp. 2d at 435-37. Another court has held that "significantly harmful" information includes a party's "intimate thoughts and actions at

13

the time of the relevant events" underlying the action, because such knowledge may lead to "an unfair cross-examination." Miness, 762 F. Supp. 2d at 480-81. In contrast, courts have held that information is not "significantly harmful" if it is public information, if it merely regards the "history of the dispute," or if it is "likely to be revealed at [the moving party's] deposition or in other discovery." Zalewski, 856 F. Supp. 2d at 435; Bell v. Cumberland Cty., No. 09-6485 (JHR) (JS), 2012 WL 1900570, at *8 (D.N.J. May 23, 2012) (applying the New Jersey analog to N.Y.R.P.C. 1.18).

Benevida Foods, LLC, 2016 WL 3453342, at *11.

The communication between the Luibrand Law Firm and Riccio amounted to two, two-minute phone calls; an intake conversation with a legal assistant, which was documented in contemporaneously-taken notes that do not reflect any discussion of plaintiff/an unnamed political hire[10]; an approximately twenty-minute phone conversation with Mr. Luibrand; and the sending of a singular document by e-mail, the Last Chance Agreement. See Dkt. No. 8-4 at 2-3; see dkt. no. 9-2 at 1.

Defendants have not demonstrated that, through these limited communications, plaintiff's counsel received information from Riccio that could be "significantly harmful" to defendants. The parties significantly disagree over the information Riccio shared with Mr. Luibrand. As noted, Riccio indicates that he either mentioned plaintiff by name or referred to him as a "political hire" and expressed his belief that plaintiff was the reason underlying the Town's disciplinary actions against him. Dkt. No. 8-1 at 14 (citing dkt. no. 8-2). By contrast, plaintiff argues that the matter for which Riccio sought legal advice/representation was not related to the present action but was one related to timeliness issues. See Dkt. No. 9 at 9-10. Plaintiff contends that Riccio did not

---

[10]  Indeed, the notes reflect that plaintiff "was told that he is taking extended lunches and breaks," he was given "a letter yesterday which has a deadline of tomorrow that [Riccio] believes is setting him up for termination," and was asking, "[s]hould he sign the document [Last Chance Agreement] and does he have a case against the town." Dkt. No. 9-2 at 1.

mention plaintiff, either by name or by "'generalized description.'" Id. at 10.  Further, Riccio states that he received legal advice, and that Mr. Luibrand told him he could represent him in a lawsuit against the Town of Glenville; whereas Mr. Luibrand asserts that he did not provide legal advice about the discipline issue, and told Riccio that he could not represent him because he was required to go through his union for a grievance matter.  See Dkt. No. 8-2 at 3 ¶11; Dkt. No. 9 at 10.  However, defendants do not explain – nor even seek to explain in camera – the allegedly confidential information it has provided or how this specific information is significantly harmful to defendants.

Although, noted supra, at least one Court has held that the sharing of a party's "intimate thoughts and actions at the time of the relevant events" could be significantly harmful, defendants have provided no real detail as to what thoughts were allegedly shared with Mr. Luibrand relating to events directly relevant to the instant litigation.  Even if plaintiff did share some thoughts about the discipline he was facing, because the Court is not privy to the thoughts that were allegedly shared, and defendants did not provide them, it cannot assess the likelihood that sharing such information could lead to an unfair cross examination.  See Benevida Foods, LLC, 2016 WL 3453342, at *11.  Absent this information, defendants cannot sincerely and convincingly argue that plaintiff has access to information that would lead to a trial taint.  Defendants cite Streichert to argue that such an advantage could be "significantly harmful" even if the information shared goes only to background matters, Dkt. No. 8-1 at 13 (quoting Streichert v. Town of Chester, New York, No. 19-CV-7133 (KMK), 2021 WL 735475, at *12 (S.D.N.Y. Feb. 25, 2021) (citing Bennett Silvershein Assoc. v. Furman, 776 F. Supp. 800, 804 (S.D.N.Y. Oct. 29, 1991)).  However, the Streichert Court declined to disqualify

in such a situation after finding that the information the attorney learned from the prospective client "almost certainly would have been disclosed during discovery." Streichert, 2021 WL 735475, at *13.

Even putting aside Mr. Luibrand's argument contending that Riccio never shared such opinions or details about plaintiff/an unnamed political hire, defendants' generalized, conclusory contentions that Riccio shared with Mr. Luibrand his "opinions," "confidential disciplinary processes" with the Town, and discussions with his Union representatives, are speculative and insufficient to warrant disqualification. Benevida Foods, LLC, 2016 WL 3453342, at *10 ("In a case where the divulging of client confidences is at issue, 'speculation . . . will not suffice to grant a motion to disqualify.'") (quoting Hickman, 371 F. Supp.2d at 229 and citing Twin Labs., Inc. v. Weider Health & Fitness, No. 87-CV-0949 (MBM), 1989 WL 49368, at *4 (S.D.N.Y. May 4, 1989)). Defendants have failed to demonstrate that through his conversation with Mr. Luibrand, Riccio shared any kind of settlement strategy or bottom line, and because plaintiff's litigation had not yet commenced, it is not possible for Riccio to have shared his impression of the instant litigation or his thoughts regarding the strength or weakness of plaintiff's positions. See Benevida Foods, LLC, 2016 WL 3453342, at *11.

As for defendants' contention that Riccio sent the Luibrand Law Firm confidential "documents," the only documentary evidence defendants proffer as being shared with the Luibrand Law Firm is the Last Chance Agreement. The Last Chance Agreement does not reveal any of defendants' confidential opinions or settlement strategies. See Dkt. No. 9-3. As noted, the document addresses plaintiff's time and attendance disciplinary issues. See id. at 1-2 (noting requirements for: breaks, use/misuse of work

vehicle, charging time to the Town when not working/traveling to work, and reporting for daily assignments). The Agreement does not reference plaintiff or any of the alleged matters plaintiff raises in this lawsuit. Even if Riccio alleges that he was presented with the Last Chance Agreement because of plaintiff's/a political hire's false allegations against him, the document itself does not reflect any such information or allegation. It also does not reveal any confidential communications with plaintiff's union representative. Further, the Court agrees that this document would undoubtedly need to be overturned through discovery in this action. See Streichert, 2021 WL 735475, at *13.

A close review of this document, combined with the facts that no actual representation occurred and that the communication between the Luibrand Law Firm and Riccio was minimal, leads the Court to conclude that the sharing of the Last Chance Agreement document with Mr. Luibrand is not "significantly harmful" to defendants, and, thus, does not warrant the Luibrand Law Firm's disqualification. See Dkt. No. 9-3.

Next, the Court finds the social encounter between the Luibrands, Riccio, and his friend Ms. Zatlokowicz does not require, nor even tip the scales toward, disqualification of plaintiff's counsel. The parties disagree over this interaction between Mary Grace Luibrand and Ms. Zatlokowicz and/or Riccio. Riccio suggests that the Luibrands were acquainted with Ms. Zatlokowicz prior to the night of March 3, 2023, attended the sports bar as a planned "social gathering," and implies that the Luibrands socialized with Riccio and Ms. Zatlokowicz the following day. Plaintiff strongly disputes this characterization. Plaintiff contends that Ms. Zatlokowicz invited the Luibrands to meet

17

them the following day, but they declined. See Dkt. No. 9 at 5. Regardless of their disagreement over the above, defendants do not contend that Riccio discussed his dispute with the Town/plaintiff with the Luibrands during the March 3, 2023, encounter; that Riccio even realized that Mr. Luibrand was the attorney he spoke with by phone; or that Mr. Luibrand realized the same for Riccio.[11] See generally Dkt. No. 8-1. Indeed, defendants do not even offer an explanation for their belief as to why this encounter should lead the Court to disqualify Luibrand. The Court holds that it does not merit – alone or in consideration with defendants' other arguments – disqualification of plaintiff's counsel.

## V. Conclusion

In sum, for the reasons discussed herein, the Court concludes that defendants have failed to show that there exists an actual conflict of interest such that Mr. Luibrand's continued representation of plaintiff in this action could result in substantial harm to defendants. Accordingly, the motion to disqualify, dkt. no. 8, is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 14, 2024
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[11] Mr. Luibrand's affidavit states he did not realize, indicating that he did not speak to Mr. Riccio, who was sitting four seats away, and only occasionally participated in the conversation with his wife and Ms. Zatlokowicz. Dkt. No. 9 at 5.